# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ANALOG DEVICES, INC., )
)
Plaintiff, )    C.A. No. 19-2225-RGA
)
v. )
)
XILINX, INC., )
)
Defendant. )
)
_____ )
)
XILINX, INC. and )
XILINX ASIA PACIFIC PTE. LTD., )
)
Counterclaim Plaintiffs, )
)
v. )
)
ANALOG DEVICES, INC., )
)
Counterclaim Defendant. )

## XILINX'S OPENING BRIEF IN SUPPORT OF
## ITS MOTION TO STAY ADI'S CLAIMS PENDING *INTER PARTES* REVIEW

Dated:  July 28, 2020

OF COUNSEL:

Michael A. Jacobs
Richard S.J. Hung
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7455
mjacobs@mofo.com
rhung@mofo.com

Bita Rahebi
Hector G. Gallegos
Alex S. Yap
Ryan J. Malloy

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com
*Attorneys for Xilinx, Inc.*
*and Xilinx Asia Pacific Pte. Ltd.*

sf-4252518

MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017
(213) 892-5255
brahebi@mofo.com
hgallegos@mofo.com
ayap@mofo.com
rmalloy@mofo.com

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ......................................................................................................... 1

II.     NATURE AND STAGE OF PROCEEDINGS ........................................................... 2

III.    SUMMARY OF ARGUMENT ................................................................................... 2

IV.     STATEMENT OF FACTS .......................................................................................... 3

V.      LEGAL STANDARD ................................................................................................. 5

VI.     ARGUMENT .............................................................................................................. 8

       A.      Factor One:  A Stay Will Simplify or Eliminate Issues for Trial ......................... 8

              1.      Xilinx's IPR petitions are highly likely to eliminate or at least narrow the issues relating to ADI's patents-in-suit.................................... 9

              2.      A stay will reduce the burden of litigation on the parties and the Court ....................................................................................................... 14

       B.      Factor Two:  This Case Is at an Early Stage ...................................................... 16

       C.      Factor Three: ADI Will Not Be Unduly Prejudiced by a Stay ........................... 17

              1.      The timing of the filed IPR petitions favors a stay ................................. 17

              2.      The timing of this motion favors a stay ................................................. 18

              3.      The relationship of the parties............................................................... 18

       D.      In the Alternative, the Court Should Stay ADI's Infringement Claims for the '250, '463, and '659 Patents ....................................................................... 19

VII.    CONCLUSION.......................................................................................................... 20

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*AIP Acquisition LLC v. Level 3 Commc'ns, LLC*,
    C.A. No. 12-617-GMS, 2014 WL 12642000 (D. Del. Jan. 9, 2014).......................................15

*Am. GNC Corp. v. LG Elecs. Inc.*,
    No. 17-01090-BAS-BLM, 2018 WL 1250876 (S.D. Cal. March 12, 2018) ..........7, 13, 16, 17

*Arch Chems., Inc. v. Sherwin-Williams Co.*,
    C.A. No. 18-2037-LPS, D.I. 48 (D. Del. Nov. 5, 2019) .................................................8, 10, 15

*Aylus Networks, Inc. v. Apple Inc.*,
    856 F.3d 1353 (Fed. Cir. 2017).........................................................................................12

*Bayer Pharma AG v. Macleods Pharm., Ltd.*,
    C.A. No. 15-464-GMS, 2016 WL 1450771 (D. Del. Apr. 12, 2016).......................................5,

*BodyMedia, Inc. v. Basis Sci., Inc.*,
    C.A. No. 12-133-GMS, 2013 WL 2462105 (D. Del. June 6, 2013).......................................18

*Bonutti Skeletal Innovations, LLC. v. Zimmer Holdings, Inc.*,
    C.A. No. 12-1107-GMS, 2014 WL 1369721 (D. Del. Apr. 7, 2014).....................................18

*Bradium Techs. LLC v. Microsoft Corp.*,
    C.A. No. 15-00031-RGA, D.I. 31 (D. Del. Sept. 24, 2015) .................................................7, 15

*Canatello LLC v. AXIS Commc'ns, Inc.*,
    C.A. No. 13-1227-GMS, 2014 WL 12774920 (D. Del. May 14, 2014)..................................13

*CG Tech. Dev., LLC v. William Hill U.S. Holdco, Inc.*,
    C.A. No. 18-533-RGA, 2019 WL 4098002 (D. Del. Aug. 29, 2019)......................................14

*Chestnut Hill Sound Inc., v. Apple Inc*,
    C.A. No. 15-261-RGA, D.I. 46 (D. Del. Dec. 3, 2015) ...........................................................7

*Clinton v. Jones*,
    520 U.S. 681 (1997)...............................................................................................................5

*Cypress Semiconductor Corp. v. GSI Tech., Inc.*,
    No. 13-02013-JST, 2014 WL 5021100 (N.D. Cal. Oct. 7, 2014)...........................................20

*Delphix Corp. v. Actifio, Inc.*,
    No. 13-04613-BLF, 2014 WL 6068407 (N.D. Cal. Nov. 13, 2014).......................................20

*Ethicon LLC v. Intuitive Surgical, Inc.*,
   C.A. No. 17-871-LPS, 2019 WL 1276029 (D. Del. Mar. 20, 2019) ..............................5, 6, 18

*Evolutionary Intelligence, LLC v. Facebook, Inc.*,
   No. 13-4202-SI, 2014 WL 261837 (N.D. Cal. Jan. 23, 2014).......................................7, 15, 16

*Evolutionary Intelligence, LLC v. Sprint Nextel Corp.*,
   No. 13-4513-RMW, 2014 WL 819277 (N.D. Cal. Feb. 28, 2014)..........................................17

*Evolutionary Intelligence, LLC v. Yelp Inc.*,
   No. 13-03587-DMR, 2013 WL 6672451 (N.D. Cal. Dec. 18, 2013) .....................................15

*GT Nexus, Inc. v. Inttra, Inc.*,
   No. 11-02145-SBA, 2014 WL 3373088 (N.D. Cal. July 9, 2014) ..........................................14

*Huvepharma Eood & Huvepharma, Inc. v. Associated British Foods, PLC*,
   C.A. No. 18-129-RGA, 2019 WL 3802472 (D. Del. Aug. 13, 2019)................................16, 17

*Intellectual Ventures II LLC v. U.S. Bancorp*,
   No. 13-2071-ADM-JSM, 2014 WL 5369386 (D. Minn. Aug. 7, 2014)...................................12

*Ironworks Patents, LLC v. Apple, Inc.*,
   C.A. No. 17-1399-RGA, D.I. 30 (D. Del. Aug. 7, 2018)............................................................7

*Invensas Corp. v. Samsung Elecs. Co.*,
   C.A. No. 17-1363-MF-SRF, 2018 WL 4762957 (D. Del. Oct. 2, 2018)...................................7

*Lund Mot. Prods., Inc. v. T-Max Hangzhou Tech. Co., Ltd.*,
   No. 17-01914-CJC-JPR, 2019 WL 116784 (C.D. Cal. Jan. 2, 2019) .............................8, 9, 10

*MIICs & Partners Am. Inc. v. Toshiba Corp.*,
   C.A. No. 14-00803-RGA, 2015 WL 9854845 (D. Del. Aug. 11, 2015).............................6, 15

*Murata Machinery USA v. Daifuku Co., Ltd.*,
   830 F.3d 1357 (Fed. Cir. 2016)................................................................................................6

*Neste Oil OYJ v. Dynamic Fuels, LLC*,
   C.A. No. 12-1744-GMS, 2013 WL 3353984 (D. Del. July 2, 2013)................................10, 18

*PersonalWeb Techs., LLC v. Facebook, Inc.*,
   C.A. No. 5:13-cv-01356-EJD, 2014 WL 116340 (N.D. Cal. Jan. 13, 2014)...........................10

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) ...........................................................................13

*Princeton Dig. Image Corp. v. Konami Dig. Entm't Inc.*,
   C.A. No. 12-1641-LPS-CJB, 2014 WL 3819458 (D. Del. Jan. 15, 2014) .......................14, 17

iii

*Qualcomm Inc. v. Apple Inc.*,
  No. 17-2402-CAB-MDD, 2018 WL 4104951 (S.D. Cal. Aug. 29, 2018)......................8, 9, 10

*RSB Spine, LLC v. Medacta USA, Inc.*,
  C.A. No. 18-1973-RGA, D.I. 73 (D. Del. June 15, 2020) ........................................................14

*SAS Inst, Inc. v. Iancu*,
  138 S. Ct. 1348 (2018)........................................................................................................7, 9

*Semiconductor Energy Lab. Co., Ltd. v. Chimei Innolux Corp.*,
  No. SACV-12-JST, 2012 WL 7170593 (C.D. Cal. Dec. 19, 2012)...........................................7

*Sioux Chief Mfg. Co., Inc. v. Zurn Indus.*,
  C.A. No. 18-163-RGA, D.I. 45 (D. Del. June 7, 2018) ............................................................7

*SunPower Corp. v. PanelClaw, Inc.*,
  C.A. No. 12-1633-GMS, 2014 WL 12774919 (D. Del. May 16, 2014)..................................12

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
  759 F.3d 1307 (Fed. Cir. 2014).............................................................................................18

*Wi-LAN Inc. v. LG Elecs. Inc.*,
  No. 17-00358-BEN-MDD, 2018 WL 2392161 (S.D. Cal. May 22, 2018) .............8, 10, 16, 18

**Statutes**

35 U.S.C. §§ 313-314 ...............................................................................................................15

35 U.S.C. § 316(a)(8)................................................................................................................19

35 U.S.C. § 316(a)(11)................................................................................................................5

35 U.S.C. § 319 .........................................................................................................................19

**Other Authorities**

37 C.F.R. § 42.100(b) .................................................................................................................8

77 Fed. Reg. 48756 .....................................................................................................................5

83 Fed. Reg. 51340 .....................................................................................................................5

iv

## I.      INTRODUCTION

Xilinx, Inc. ("Xilinx") moves to stay all of Analog Devices, Inc.'s ("ADI") claims against Xilinx, or, alternatively, to stay ADI's claims as to U.S. Patent Nos. 10,250,250 ("'250 Patent"), 8,487,659 ("'659 Patent"), and 7,012,463 ("'463 Patent") pending resolution of Xilinx's petitions for *inter partes* review ("IPR").  Xilinx and Xilinx Asia Pacific Pte. Ltd. ("Xilinx Asia Pacific") have filed IPR petitions covering ADI's '250, '659, and '463 Patents and plan to file IPR petitions on additional ADI patents-in-suit within the next couple of months.[1]

All three factors that courts consider in deciding whether to stay litigation pending IPR proceedings weigh in favor of granting a stay.  *First*, granting the stay will eliminate or significantly streamline the issues related to ADI's patents-in-suit, which is particularly meaningful in a complex case like this one that involves complicated semiconductor technology. Xilinx's current IPRs challenge the majority of ADI's patent claims across three of ADI's patents-in-suit and are highly likely to eliminate or significantly narrow the issues at trial. *Second*, this case is still in its early stages.  Discovery is just beginning, no depositions have been noticed or taken, the parties have yet to file their claim construction briefs, and expert discovery has not yet begun.  *Third*, a stay will not cause undue prejudice or a clear tactical disadvantage to ADI.  Xilinx diligently filed its IPRs and promptly moved to stay this case.

Because this case is at an early stage, and a stay will simplify the issues for trial, reduce the burden on this Court and the parties, and not cause ADI any undue prejudice or a clear tactical disadvantage, this Court should stay all of ADI's claims against Xilinx, pending the resolution of Xilinx's IPR petitions—both those already filed and those to be filed. Alternatively, this Court should stay ADI's claims as to the '250, '659, and '463 Patents.

---

[1] Should the Court determine that a stay is not warranted at this time, Xilinx intends to file a renewed motion to stay after it has filed these additional IPR petitions.

sf-4252518

## II.     NATURE AND STAGE OF PROCEEDINGS

ADI filed its complaint on December 5, 2019, alleging that Xilinx's Radio Frequency System-on-Chip ("RFSoC") products infringe eight ADI patents.  (D.I. 1.)  On January 21, 2020, Xilinx filed its Answer and, with Xilinx Asia Pacific, Counterclaims, alleging that more than 40 ADI products infringe eight Xilinx patents.  (D.I. 11.)  On April 3, 2020, Xilinx and Xilinx Asia Pacific filed their First Amended Counterclaims.  (D.I. 46.)  This Court issued an initial scheduling order on February 14, 2020 (D.I. 28), and an amended scheduling order on June 23, 2020 (D.I. 80).  Under the amended scheduling order, infringement contentions are due on August 17, 2020, the parties' proposed claim constructions are due on October 13, 2020, opening claim construction briefs are due on November 5, 2020, and *Markman* hearings are scheduled for February 10, 2021, for ADI's patents-in-suit, and February 17, 2021, for Xilinx's patents-in-suit. (*Id.* at 1–2.)  Fact discovery does not close until May 4, 2021, and opening expert reports are not due until June 1, 2021.  (*Id.* at 2.)  Trial for ADI's claims is currently set for March 14, 2022, and trial for Xilinx's claims is currently set for March 28, 2022.  (*Id.* at 3.)

Discovery is in its earliest stages, no depositions have been taken or noticed, and expert discovery has not yet begun.  The most significant deadlines in this case remain outstanding.

## III.     SUMMARY OF ARGUMENT

Courts weigh three factors in deciding whether to stay litigation pending IPR proceedings:  (1) whether the stay will simplify the issues for trial; (2) whether discovery is complete and a trial date is set; and (3) whether the stay would cause undue prejudice or a clear tactical disadvantage to the non-moving party.  This Court should grant Xilinx's motion to stay all of ADI's claims against Xilinx pending resolution of Xilinx's IPRs, or in the alternative, stay ADI's claims as to the '250, '659, and '463 Patents, because all three factors weigh in favor of granting a stay:

2

1.     *First*, a stay will eliminate or significantly streamline the issues related to ADI's patents-in-suit.  Xilinx has filed IPRs against three of ADI's patents-in-suit and plans to file additional IPR petitions within the next couple of months.  Xilinx's IPRs against the '250, '659, and '463 Patents address the majority of the claims in those three patents and are highly likely to eliminate or significantly narrow the issues related to ADI's patents-in-suit.

2.     *Second*, this action is still in its early stages, as discovery is in its early stages, no depositions have been noticed or taken, the parties have yet to exchange infringement and invalidity contentions, the parties have yet to file their claim construction briefs, and expert discovery has not yet begun.

3.     *Third*, a stay will not cause undue prejudice or a clear tactical disadvantage to ADI.  Xilinx diligently filed IPR petitions within six months of responding to ADI's complaint and moved promptly to seek a stay of ADI's claims against Xilinx.

## IV.     STATEMENT OF FACTS

ADI's claims against Xilinx involve eight patents relating to technology for integrated circuits (*i.e.*, microchips).  ADI alleges that all eight patents—the '250 Patent, '659 Patent, '463 Patent, and U.S. Patent Nos. 7,719,452 ("'452 Patent"), 7,663,518 ("'518 Patent"), 6,900,750 ("'750 Patent"), 7,274,321 ("'321 Patent"), and 7,286,075 ("'075 Patent")—relate to analog-to-digital converters ("ADCs").  (D.I. 1, ¶¶ 11-19.)

ADI's complaint provides descriptions of the purported subject matter involved in each of its patents-in-suit.  The '250 Patent purportedly relates to "a circuit and technique for quickly activating a switch, such as a front-end sampling switch, by generating a boosted voltage using a positive feedback loop."  (*Id.*, ¶ 15.)  The '659 Patent purportedly relates to "timing circuits that compensate for the effects of variations in process, voltages, and temperature."  (*Id.*, ¶ 18.)  The '463 Patent purportedly relates to "switched capacitor circuits that provide a feedback signal to

3

reduce common-mode variations in an output of a circuit." (*Id.*, ¶ 17.) The '750 Patent purportedly relates to "calibrating an offset mismatch in analog-to-digital converters using chopping techniques." (*Id.*, ¶ 14.) The '321 Patent purportedly relates to "analog-to-digital converters having a pipelined converter architecture." (*Id.*, ¶ 16.)

The other ADI patents-in-suit—the '452, '075, and '518 Patents—purportedly relate to the use of dither in analog-to-digital converters. The '452 Patent and '075 Patent purportedly relate to the use of "injecting dither to sampled signals" to "enhance[e] linearity in analog-to-digital converters." (*Id.*, ¶¶ 12, 19.) The '518 Patent purportedly relates to "applying a dither to improve linearity." (*Id.*, ¶ 13.)

On July 17, 2020, Xilinx filed two IPR petitions challenging the validity of claims 1–3, 11–18, and 20–22 of the '250 Patent, and all claims of the '659 Patent. (*See* Exs. A-B; D.I. 83 at 1.)[2] On July 20, 2020, Xilinx filed an IPR petition challenging the validity of claims 1–7, 10–17, and 29 of the '463 Patent. (*See* Ex. C; D.I. 83 at 1.) Each of these IPR petitions is based on one or more non-admitted prior art references that the Patent Office did not consider in allowing the challenged patent to issue. Xilinx plans to file IPR petitions on additional ADI patents-in-suit within the next couple of months.

The Patent Trial and Appeal Board ("PTAB") is likely to not only institute Xilinx's IPR petitions but also find ADI's patent claims unpatentable. The PTAB has instituted trials for approximately 65% of all petitions for *inter partes* review, post-grant review, and covered business method, including 66% of petitions directed to patent claims reciting electrical/computer technology, the same technology at issue in this lawsuit. (*See* Ex. D (U.S.

---

[2] All exhibits referenced herein are attached to the Declaration of Nicholas R. Fung, dated July 28, 2020 and filed contemporaneously herewith.

sf-4252518

Patent & Trademark Office, Patent Trial & Appeal Bd., *Trial Statistics, IPR, PGR, CMB, June 2020*) at 6 (6,028 petitions instituted out of 9,266 petitions filed as of June 30, 2020, excluding decisions responsive to requests for rehearing); *see also id.* at 7 (66% institution rate for electrical/computer technology).)  Trials instituted by the PTAB overwhelmingly lead to the PTAB finding claims unpatentable; the PTAB finds at least one or more claims unpatentable in approximately 80% of instituted proceedings and finds *all* claims unpatentable in 62% of instituted proceedings.  (*See id*. at 11.)

The PTAB is expected to issue institution decisions on Xilinx's IPR petitions against the '250 and '659 Patents no later than January 27, 2021.  *See* Exs. E-F; Consolidated Trial Practice Guide, 77 Fed. Reg. 48756, 48757 ("General Overview of Proceedings"), available at https://www.uspto.gov/sites/default/files/ip/boards/bpai/trial_practice_guide_74_fr_48756_0814 12.pdf.  The PTAB is expected to issue an institution decision on Xilinx's IPR petition against the '463 Patent by approximately February 3, 2021, assuming that the PTAB issues notices of filing dates within two weeks of Xilinx's filing of its IPR petitions.  *See* Consolidated Trial Practice Guide, 77 Fed. Reg. at 48757.  Should the PTAB institute any of Xilinx's IPR petitions against the '250, '659, and '463 Patents, the PTAB must issue final written decisions within twelve months of institution, or no later than January 27, 2022, for the '250 and '659 Patents and by approximately February 3, 2022, for the '463 Patent.  *See id.* at 48768 ("O. Final Decision"); 35 U.S.C. § 316(a)(11).

## V.    LEGAL STANDARD

"The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."  *Clinton v. Jones*, 520 U.S. 681, 706 (1997); *see also Ethicon LLC v. Intuitive Surgical, Inc.*, C.A. No. 17-871-LPS, 2019 WL 1276029, at *1 (D. Del. Mar. 20, 2019) ("Whether or not to stay litigation is a matter left to the Court's discretion."); *Bayer Pharma AG*

*v. Macleods Pharm., Ltd.*, C.A. No. 15-464-GMS, 2016 WL 1450771, at *1 (D. Del. Apr. 12, 2016) ("District courts are given significant, broad discretion to manage their dockets to maximize efficiency while not compromising justice to the parties.").

Courts weigh three factors in deciding whether to stay litigation pending IPR proceedings:  "(1) whether a stay will simplify the issues for trial, (2) whether discovery is complete and a trial date has been set, and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party."  *Ethicon LLC*, 2019 WL 1276029, at *1 (citation omitted) (granting stay of competitor case post-fact discovery and claim construction order).  As part of determining whether granting a stay pending IPR proceedings is appropriate, courts may evaluate whether a stay will reduce the burden of litigation on the parties and the Court.  *See Murata Machinery USA v. Daifuku Co., Ltd.*, 830 F.3d 1357, 1362 (Fed. Cir. 2016) ("Attendant to the district court's inherent power to stay proceedings is the court's discretionary prerogative to balance considerations beyond those captured by the three-factor stay test.  The burden litigation places on the court and the parties when IPR proceedings loom is one such consideration that district courts may rightfully choose to weigh.").

Courts in this District and elsewhere have recognized the compelling benefits of granting a stay prior to the PTAB instituting IPR, especially where many of the patent claims are potentially at issue in the IPR:

> The pending review has the potential to simplify the issues for trial, particularly in light of Plaintiffs' assertion of claims from a dozen patents.  ***As a general matter, with so many claims from so many patents in play, the law of probabilities makes it almost certain that the PTAB will grant at least some of the IPR petitions, and that some of the claims will eventually be rejected or modified, and others of them, even if neither rejected nor modified, will garner additional prosecution history that may be relevant to claim construction.  Simplification is very likely.***

*MIICs & Partners Am. Inc. v. Toshiba Corp.*, C.A. No. 14-00803-RGA, 2015 WL 9854845, at

*1 (D. Del. Aug. 11, 2015) (emphasis added); *see also Bradium Techs. LLC v. Microsoft Corp.*, C.A. No. 15-00031-RGA, D.I. 31 at 13 (D. Del. Sept. 24, 2015) (granting stay prior to IPR institution) (Ex. G); *Chestnut Hill Sound Inc., v. Apple Inc.*, C.A. No. 15-261-RGA, D.I. 46 at 1 (D. Del. Dec. 3, 2015) (granting stay until IPR institution decision) (Ex. H); *Am. GNC Corp. v. LG Elecs. Inc.*, No. 17-01090-BAS-BLM, 2018 WL 1250876, at *3 (S.D. Cal. March 12, 2018) (granting stay prior to IPR institution and noting that "[i]f the Court were to wait for the PTO to accept the IPR petitions to determine the propriety of a stay, the Court risks needlessly wasting its resources"); *Evolutionary Intelligence, LLC v. Facebook, Inc.,* No. 13-4202 SI, 2014 WL 261837, at *2–3 (N.D. Cal. Jan. 23, 2014) ("*Facebook*") (granting stay prior to IPR institution where plaintiff had served infringement contentions and exchanged written discovery); *but see Ironworks Patents, LLC v. Apple, Inc.*, C.A. No. 17-1399-RGA, D.I. 30 (D. Del. Aug. 7, 2018) (denying motion to stay prior to IPR institution "without prejudice to renew if the PTAB institutes review on some or all of the asserted claims of the two patents") (Ex. I); *Sioux Chief Mfg. Co., Inc. v. Zurn Indus., LLC*, C.A. No. 18-163-RGA, D.I. 45 (D. Del. June 7, 2018) (requesting parties to notify court after PTAB's institution decision, and that if review is instituted, the Court will schedule argument on the motion to stay) (Ex. J); *Invensas Corp. v. Samsung Elecs. Co.*, C.A. No. 17-1363-MF-SRF, 2018 WL 4762957, at *6 (D. Del. Oct. 2, 2018) (denying motion to stay prior to IPR institution "without prejudice to renew an application to stay the case, if warranted, following the institution of any subsequent IPR proceeding").

Recent changes in the law have further strengthened the grounds for granting stays prior to IPR institution.  First, the Supreme Court has now mandated that once the PTAB institutes an IPR petition, the PTAB is required to address every claim challenged in the petition.  *See SAS Inst, Inc. v. Iancu*, 138 S. Ct. 1348, 1354 (2018).  Second, the PTAB now construes patent claim

sf-4252518

terms under the same legal standards applied by the district court.  *See* 37 C.F.R. § 42.100(b). Courts have recognized that these changes in the law encourage stays of litigation even prior to IPR institution.  *See, e.g.*, *Arch Chems., Inc. v. Sherwin-Williams Co.*, C.A. No. 18-2037-LPS, D.I. 48 (D. Del. Nov. 5, 2019) (granting stay prior to IPR institution and finding "the arguments for a stay pending institution and/or completion of an IPR have been strengthened by recent changes in the law: namely, institution must be on all or none of the claims on which IPR is sought . . . and claim construction undertaken by the Patent Trial and Appeal Board ('PTAB') is now conducted according to the same legal standards this Court must apply.") (Ex. K); *Lund Mot. Prods., Inc. v. T-Max Hangzhou Tech. Co., Ltd.*, No. 17-01914-CJC-JPR, 2019 WL 116784, at *2 (C.D. Cal. Jan. 2, 2019) (citing to *SAS* and granting stay pre-institution in lawsuit between competitors); *Wi-LAN Inc. v. LG Elecs. Inc.*, No. 17-00358-BEN-MDD, 2018 WL 2392161, at *2 (S.D. Cal. May 22, 2018) (granting stay until PTAB issues institution decisions "in light of the Supreme Court's mandate to review all contested claims upon grant of IPR and the complexity of this case"); *Qualcomm Inc. v. Apple Inc.*, No. 17-2402-CAB-MDD, 2018 WL 4104951, at *2, 4 (S.D. Cal. Aug. 29, 2018) (citing to *SAS* and granting stay until PTAB decides whether to institute IPR).

## VI.    ARGUMENT

The Court should grant Xilinx's motion to stay all of ADI's claims against Xilinx pending resolution of Xilinx's IPRs because all three factors weigh in favor of granting a stay.  A stay is likely to simplify the issues at trial because Xilinx's IPRs are highly likely to eliminate or significantly narrow the issues relating to ADI's patents-in-suit, this action is still in its early stages, and a stay will not cause undue prejudice or a clear tactical disadvantage to ADI.

### A.    Factor One:  A Stay Will Simplify or Eliminate Issues for Trial

A stay is likely to simplify the issues at trial because Xilinx's IPR petitions will address

the majority of ADI's patent claims in the '250, '463, and '659 Patents and are highly likely to eliminate or at least narrow the issues relating to ADI's patents-in-suit.  A stay will also reduce the burden of litigation on the parties and the Court.

> **1.      Xilinx's IPR petitions are highly likely to eliminate or at least narrow the issues relating to ADI's patents-in-suit**

Although ADI has not yet served infringement contentions or identified its asserted patent claims, there is a very high likelihood that the PTAB will institute IPR on at least some, if not the majority, of ADI's asserted patent claims for the '250, '659, and '463 Patents.  Xilinx's IPR petitions cover all of the claims of the '659 Patent and the majority of the claims of the '250 and '463 Patents.  Institution on Xilinx's IPRs is likely, as the PTAB has instituted trials for approximately 65% of all petitions for review of patent claims, including 66% of all petitions directed to electrical/computer technology.  *See supra*, § IV.

There is also a high likelihood that Xilinx's IPRs that are instituted by the PTAB will eliminate or at least narrow the issues relating to ADI's patents-in-suit.  As described above, 80% of instituted trials lead to the PTAB finding at least one claim unpatentable with 62% of such IPRs leading to the PTAB finding all challenged claims unpatentable.  *See supra*, § IV.  For those claims found unpatentable by the PTAB, no claim construction or discovery will be needed as to those claims.  Moreover, in light of the Supreme Court's decision in *SAS*, if the PTAB grants review of any of the IPR petitions, it is statutorily required to address *every* patent claim challenged in that petition.  *SAS Inst.*, 138 S. Ct. at 1354.  Accordingly, the institution of any of Xilinx's IPR petitions will ensure that the Court benefits from the PTAB's guidance on all of the challenged claims for that patent.  *See, e.g.*, *Lund Mot. Prods.*, 2019 WL 116784, at *2 (citing to *SAS* and staying case pre-institution); *Qualcomm Inc.*, 2018 WL 4104951, at *2 (same).

The IPR petitions are likely to be granted and will simplify the issues and streamline trial

9

in this case.  Courts increasingly have been willing to grant stays prior to IPR institution after the recent changes in the law requiring the PTAB to address every claim challenged in an IPR petition and to construe the claims under the same standard as the district court.  *See Arch Chems*, D.I. 48 (citing to *SAS* and 37 C.F.R. § 42.100(b) and granting pre-institution stay) (Ex. K); *Lund Mot. Prods.*, 2019 WL 116784, at *2 (citing to *SAS* and granting stay pre-institution); *Wi-LAN*, 2018 WL 2392161, at *1–2 (same); *Qualcomm Inc.*, 2018 WL 4104951, at *2 (same).

The potential elimination of ADI's patent claims is particularly meaningful in a complex case like this one that involves highly complicated semiconductor technology, which is particularly appropriate for the expertise of the PTAB.  *See Neste Oil OYJ v. Dynamic Fuels, LLC*, C.A. No. 12-1744-GMS, 2013 WL 3353984, at *4 (D. Del. July 2, 2013) (granting stay and noting simplification could occur if "all prior art presented to the court at trial will have been first considered by the PTO with its particular expertise") (citation omitted); *PersonalWeb Techs., LLC v. Facebook, Inc.*, No. 5:13-cv-01356-EJD, 2014 WL 116340, at *4 (N.D. Cal. Jan. 13, 2014) ("[A]llowing these invalidity arguments to be determined once, employing the specialized expertise of the PTO, produces the exact results—avoiding duplicative costs and efforts and averting the possibility of inconsistent judgments . . . .").

The complexity of the invalidity issues implicated by ADI's claims against Xilinx is readily apparent from a review of Xilinx's filed IPRs.  (*See* Exs. A-C.)  In Xilinx's IPR petition against the '463 Patent, Xilinx explained how U.S. Patent No. 6,697,001 ("Oliaei") discloses an error correcting circuit:

> In the below corrected Figure 6, the portion of circuit 600 corresponding to the common-mode feedback circuit 500 is red, and the balancing capacitors 608 and 609, along with their associated switches 606 and 607, are orange.



*Ex.1002, ¶159*

Oliaei discloses adding balancing capacitors 608 and 609 between the feedback control node $V_{cntrl}$ (purple), and the bias node $V_{bias}$ (purple). Oliaei's feedback control node $V_{cntrl}$ is structurally and functionally the same as feedback control node $V_{FB}$ of the '463 Patent, and Oliaei's bias node $V_{bias}$ is likewise structurally and functionally the same as bias node $V_{Bias}$ of the '463 Patent.

Oliaei discloses, "Using a symmetric SC-CMFB 600 as in FIG. 6, it may be possible to balance the capacitive load of the amplifier. . . [C]apacitors 608-609 and switches 606-607, have been added to maintain the amplifier capacitive load constant."

The above statement by Oliaei is germane to the error correcting function of '463 Patent, which states:

> for common-mode error gain to remain constant, the error gain when signal Φ1 is high should be equal to the error gain when signal Φ2 is high so that:

$$\frac{c_{gs}(M_0)}{(c^a_{cmfb} + c^b_{cmfb})} = \frac{(c_{gs}(M_0) + c_1)}{(c^a_{cmfb} + c^b_{cmfb} + c^a_{fly} + c^b_{fly})}. \tag{1}$$

(Ex. C, '463 IPR Petition, at 46-47 (citations omitted).)

11

The accused functionality of Xilinx's RFSoC products also involve highly complicated semiconductor technology.  ADI admits that the technology at issue in this lawsuit is highly specialized.  (*See* D.I. 76 at 13:11-14:7 (ADI's counsel noting that its experts were located across the country in upstate New York, Illinois, and Los Angeles, and stating that "this is a very particular field . . . it's not like a computer software where you can find an expert at any university.") (Ex. L).)  A stay would allow for potential significant narrowing of this complex case, as the parties and the Court will not need to expend resources on ADI's patent claims that are found invalid by the PTAB.

A stay will afford the Court the benefit of any positions taken by ADI in opposition to the IPRs, which affect claim construction and limit the scope of ADI's patent claims.  It is axiomatic that "statements made by a patent owner during an IPR proceeding, whether before or after an institution decision, can be considered for claim construction and relied upon to support a finding of prosecution disclaimer."  *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1362 (Fed. Cir. 2017).  Denying a stay may result in two stages of claim construction for ADI's patents—once per the Court's current scheduling order and then again after the conclusion of the IPRs.  *See Intellectual Ventures II LLC v. U.S. Bancorp*, No. 13-2071-ADM-JSM, 2014 WL 5369386, at *7 (D. Minn. Aug. 7, 2014) ("[I]f [Plaintiff] makes narrowing arguments to the PTAB to attempt to distinguish the prior art, the litigation proceedings (and in particular the claim construction proceedings) may have to be repeated so that such narrowing arguments can be properly considered.").  Such sequential proceedings would waste Court resources and prejudice Xilinx.

Further, the PTAB's written opinions—despite the outcome of the claims—will provide useful guidance on claim scope and validity.  "Even if the claims were to survive the IPR process entirely intact, the court would still benefit from the PTAB's expertise."  *SunPower Corp. v.*

12

*PanelClaw, Inc.*, C.A. No. 12-1633-GMS, 2014 WL 12774919, at *2 (D. Del. May 16, 2014); *see also Canatello LLC v. AXIS Commc'ns, Inc.*, C.A. No. 13-1227-GMS, 2014 WL 12774920, at *1 n.3 (D. Del. May 14, 2014) ("Should the PTAB deem the patents-in-suit unpatentable or narrow their scope, the court's resources will be conserved by expending fewer resources on claim construction or avoiding the claim construction process altogether. . . . Should the claims survive the IPR process, the court will still benefit from the PTAB's expertise.").

The simplification of issues from a stay is underscored by the fact that, as of November 2018, the PTAB's "broadest reasonable interpretation" claim construction standard for IPRs was replaced with the same standard that is used in patent cases in district courts. *See* Changes to the Claim Construction Standard for Interpreting Claims in Trial Proceedings Before the Patent Trial and Appeal Board, 83 Fed. Reg. 51340 (Oct. 11, 2018) (codified as 37 C.F.R § 42). This is the same claim construction standard articulated in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) and its progeny, which this Court applies.

A full stay of all of ADI's claims, rather than a partial stay for only the ADI patents subject to Xilinx's IPR petitions, provides the Court and the parties with the maximum benefits of a stay. By staying all of ADI's claims, the Court can avoid duplicative discovery and sequential claim construction hearings. A full stay also avoids the risk that ADI potentially recovers double damages from separate trials: the first trial on ADI's patents that are not subject to IPR and the second trial on any ADI patent claims that survive IPR. *See Am. GNC Corp.*, 2018 WL 1250876, at *4 (granting stay of entire lawsuit where two of seven patents-in-suit were subject to IPR and finding that "[m]oving forward only a subset of the [patents-in-suit] would create significant inefficiencies, including the possibility of multiple trials on multiple timelines with duplicative discovery, claim construction, and dispositive motions, burdening both the

13

parties and the Court.") (internal quotations & citation omitted).  The fact that not all of ADI's patent claims may be subject to IPR does not change the simplification and reduction of litigation that would result from a stay.  *See RSB Spine, LLC v. Medacta USA, Inc.*, C.A. No. 18-1973-RGA, D.I. 73 at 3–4 (D. Del. June 15, 2020) (granting stay where "IPR [would] not completely resolve the case . . . but slimming down a case that [defendant] says involves many, many issues that [would] not be resolved in IPR  . . . is still simplification.") (Ex. M); *CG Tech. Dev., LLC v. William Hill U.S. Holdco, Inc.*, C.A. No. 18-533-RGA, 2019 WL 4098002 (D. Del. Aug. 29, 2019) (granting stay where only three of four patents-in-suit subject to IPRs).

Should any claims survive the IPRs, Xilinx will be estopped from asserting invalidity positions it raised or reasonably could have raised in their IPR petitions, narrowing the prior art that may be asserted against any surviving ADI patent claims at trial.  *Princeton Dig. Image Corp. v. Konami Dig. Entm't Inc.*, C.A. No. 12-1461-LPS-CJB, 2014 WL 3819458, at *2 (D. Del. Jan. 15, 2014) ("[I]f the PTO grants a petition for IPR, the petitioner is estopped from asserting invalidity in a civil action on 'any ground that the petitioner raised or reasonably could have raised during that inter partes review.'") (citing to 35 U.S.C. § 315(e)).

### 2.    A stay will reduce the burden of litigation on the parties and the Court

A stay of all of ADI's claims against Xilinx will reduce the burden of litigation by allowing the parties and the Court to avoid spending resources on discovery, a *Markman* hearing, and a trial to address ADI's patent claims that have a high likelihood of cancellation.  Absent a stay, if the PTAB grants "review and finds that one or more of the asserted claims of the patents-in-suit are invalid or subject to modification, the Court will have wasted judicial resources and the parties will have unnecessarily expended funds."  *GT Nexus, Inc. v. Inttra, Inc.*, No. 11-02145-SBA, 2014 WL 3373088, at *3 (N.D. Cal. July 9, 2014) (citing *Fresenius USA, Inc. v.*

14

*Baxter Int'l, Inc.*, 721 F.3d 1330, 1340 (Fed. Cir. 2013)); *see also AIP Acquisition LLC v. Level 3 Commc'ns, LLC*, C.A. No. 12-617-GMS, 2014 WL 12642000, at *2 n.5 (D. Del. Jan. 9, 2014) (granting stay and noting that "if the court does not stay the action, the PTO's final decision will likely issue after the scheduled *Markman* hearing . . . but before trial . . . thereby nullifying the court's *Markman* efforts in the 'reasonably likely' event the claims are amended or canceled during the IPR proceeding.").

A stay would also allow the Court and the parties to conserve resources while the PTAB decides whether to institute Xilinx's IPRs, which must occur no later than January 27, 2021, for the '250 and '659 Patents, and by approximately February 3, 2021, for the '463 Patent. *See supra*, § IV; 35 U.S.C. §§ 313–314. The PTAB's institution decisions will also potentially address claim scope and provide express constructions for key claim terms. Given the short timeline for the PTAB to issue an institution decision and the likelihood of institution, many courts—including this Court—have found it unnecessary to wait to see if the PTAB grants the request. *See, e.g.*, *Arch Chems.*, C.A. No. 18-2037-LPS, D.I. 48 (granting stay pending IPR institution) (Ex. K); *Bradium Techs. LLC*, 15-cv-00031-RGA, D.I. 31 at 13 (same) (Ex. E); *MIICs & Partners*, 2015 WL 9854845, at 3 (same); *Facebook*, 2014 WL 261837, at *3 ("[I]t is not uncommon for [courts] to grant stays pending reexamination prior to the PTO deciding to reexamine the patent.") (internal quotation & citation omitted); *Evolutionary Intelligence, LLC v. Yelp Inc.*, No. 13-03587 DMR, 2013 WL 6672451, at *7 (N.D. Cal. Dec. 18, 2013) ("[I]f the PTAB rejects the IPR request, the stay will be relatively short.").

Staying the case now also prevents the parties and the Court from potentially engaging in wasteful claim construction proceedings. The expected institution dates of Xilinx's IPRs—no later than January 27, 2021, for the '250 and '659 Patents and approximately February 3, 2021,

for the '463 Patent—is just prior to the *Markman* hearing on ADI's patents-in-suit.  Staying the

case now will prevent the Court and parties from wasting considerable time and resources on

claim construction proceedings that may become largely moot and that may need to be revisited

depending on the IPRs.  *See Facebook*, 2014 WL 261837, at *3 ("[A]ny concern that the motions

are premature is alleviated by the short time frame of the initial stay and the Court's willingness

to reevaluate the stay if *inter partes* review is not instituted for all of the asserted claims."); *Am.*

*GNC Corp.*, 2018 WL 1250876, at *3 (finding that waiting for IPR institution "risks needlessly

wasting [Court] resources").

Because this case will be significantly simplified by the IPRs and a stay would reduce the

burden on the parties and the Court regardless of their outcome, this factor weighs heavily in

favor of a stay.

### B.      Factor Two:  This Case Is at an Early Stage

Granting a stay pending IPR is particularly appropriate where, as here, the case is in its

early stages.  No party has noticed depositions, fact discovery does not close until May 4, 2021,

and expert reports are not due until June 1, 2021.  (D.I. 80.)  Trial on ADI's patents-in-suit is not

until March 2022—over nineteen months away.  Courts have granted stays in cases that were

much further along than here.  In *Huvepharma*, this Court granted a stay despite the fact that the

Court had conducted a Markman hearing, issued a Markman ruling, "document discovery [was]

substantially complete[,] and fact depositions [were] starting imminently."  *Huvepharma Eood &*

*Huvepharma, Inc. v. Associated British Foods, PLC*, C.A. No. 18-129-RGA, 2019 WL 3802472,

at *1 (D. Del. Aug. 13, 2019).  In *Wi-LAN*, the court granted a motion to stay prior to IPR

institution where claim construction briefing had been completed and a *Markman* hearing had

been scheduled.  *Wi-Lan*, 2018 WL 2392161, at *1-2.  Similarly, in *American GNC Corp.*, the

court granted a stay prior to IPR institution where infringement contentions had been served and

sf-4252518

claim construction briefing had been completed.  *Am. GNC Corp.*, 2018 WL 1250876, at *2-3.

Here, the claim construction hearings are over six months away, and the parties have not yet begun the claim construction process.  The most burdensome stages of the case are yet to come.  The early procedural posture of this case and "the amount of discovery that remains" supports a stay.  *Huvepharma*, 2019 WL 3802472, at *1.

### C.    Factor Three: ADI Will Not Be Unduly Prejudiced by a Stay

ADI will not be unduly prejudiced or suffer a clear tactical disadvantage if this case is stayed pending resolution of the IPRs.  Indeed, "[b]oth sides will benefit to the extent the IPRs simplify the case (and therefore lower their litigation costs)."  *Huvepharma*, 2019 WL 3802472, at *1.  When analyzing whether a stay would cause a party to suffer undue prejudice or afford the moving party an unfair tactical advantage, courts consider: "(1) the timing of the request for review; (2) the timing of the request for stay; (3) the status of the review proceeding; and (4) the relationship of the parties."  *Princeton Dig. Image Corp.*, 2014 WL 3819458, at *4.

### 1.    The timing of the filed IPR petitions favors a stay

The timing of Xilinx's filing of its IPR petitions supports a stay.  Xilinx diligently filed its IPR petitions within eight months after ADI's service of the Complaint.  Importantly, Xilinx filed the IPRs while the case was still in its early stages and before service of ADI's infringement contentions.  Courts have found no undue prejudice in cases where a defendant filed IPRs at a much later stage and near the end of the one-year statutory period to file IPRs.  *See, e.g.*, *Evolutionary Intelligence, LLC v. Sprint Nextel Corp.*, No. 13-4513-RMW, 2014 WL 819277, at *4 (N.D. Cal. Feb. 28, 2014) (filing IPRs on the last day within the statutory time frame was not an unreasonable delay so as to prejudice the patentee); *see also Semiconductor Energy Lab. Co., Ltd. v. Chimei Innolux Corp.*, No. SACV-12-JST (JPRx), 2012 WL 7170593, at *3 (C.D. Cal. Dec. 19, 2012) (no prejudice where IPR was filed ten months after complaint and three to four

months after disclosure of asserted claims).  Accordingly, ADI will suffer no undue prejudice.

## 2.     The timing of this motion favors a stay

The timing of this motion also favors a stay.  Xilinx filed its motion to stay promptly after filing its IPR petitions.  *See Wi-LAN*, 2018 WL 2392161, at *2 (granting pre-institution stay where stay motion was filed five weeks after filing of IPR petitions).  Courts routinely find this factor in favor of a stay where there is no evidence that the stay motion was part of a dilatory litigation tactic.  *See Bonutti Skeletal Innovations, LLC. v. Zimmer Holdings, Inc.*, C.A. No. 12-1107-GMS, 2014 WL 1369721, at *3, *6 (D. Del. Apr. 7, 2014) (granting stay where "the absence of any events or rulings in the instant action that could be potentially harmful to the Defendants' positions suggests that the Defendants' stay request is not an inappropriate litigation tactic"); *Ethicon*, 2019 WL 1276029, at *3 (granting stay where there was no indication the stay motion was prompted by a case event that harmed Defendant).

## 3.     The relationship of the parties

In assessing the relationship of the parties, while courts consider whether the parties are direct competitors, the "mere potential for delay [pending PTAB review] . . . is insufficient to establish *undue* prejudice."  *Neste Oil OYJ*, 2013 WL 3353984, at *2-4.

Xilinx's RFSoC products that ADI accuses of infringement have been on the market since October 2017.  (*See* Ex. N, Xilinx Delivers Zynq UltraScale+ RFSoC Family Integrating the RF Signal Chain for 5G Wireless, Cable Remote-PHY, and Radar (Oct. 3, 2017).)  ADI waited until December 2019 to file this lawsuit, over two years after the accused Xilinx products entered the market.  The fact that ADI waited more than two years to file suit belies any notion that a stay might create undue harm or prejudice to ADI.  *See VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1319 (Fed. Cir. 2014) (no undue prejudice where competitor waited nearly a year before filing suit); *BodyMedia, Inc. v. Basis Sci., Inc*., C.A. No.

18

12-133-GMS, 2013 WL 2462105, at *1 n.1 (D. Del. June 6, 2013) ("[W]hile BodyMedia is correct that the parties offer products in the same market and, therefore, would be direct competitors, the court finds unpersuasive the assertion that this factor weighs against a stay.").

The lack of undue prejudice to ADI from a stay is further demonstrated by ADI's own delays during the early stages of discovery in this lawsuit.  In particular, ADI refused to comply with the Court's April 22, 2020 deadline for core technical document production and instead demanded that the parties circumvent the Protective Order by producing their native circuit design files in TIFF format.  (*See* D.I. 64 at 1-2.)  Even after the Court denied ADI's improper request for TIFF production (D.I. 76 at 17-18), ADI did not make its native circuit design files available for inspection until the afternoon of June 1, 2020.  (*See* Ex. O, 6/1/2020 Email from Xilinx re inspection.)  Even now, ADI's production of its native circuit design files is nowhere near complete.  (*See* Ex. P, 7/28/2020 Email from Xilinx.)

ADI will have the opportunity to participate at all stages of the IPRs.  ADI will be allowed to file written comments addressing any issues raised by the PTAB or by Xilinx.  *See* 35 U.S.C. § 316(a)(8).  ADI also will have the ability to conduct discovery, including deposing Xilinx's technical expert, and to submit expert testimony of its own.  ADI may also appeal any adverse decision to the Federal Circuit.  *See* 35 U.S.C. § 319.

### D.     In the Alternative, the Court Should Stay ADI's Infringement Claims for the '250, '463, and '659 Patents

A stay of all of ADI's claims against Xilinx is appropriate because this case is at an early stage, and a stay will simplify the issues for trial, reduce the burden on this Court and the parties, and not cause ADI any undue prejudice or an unfair tactical advantage.  As described above, a full stay of all of ADI's claims avoids potential inefficiencies, such as duplicative discovery and sequential claim construction proceedings.  *See supra*, § VI.A.1.  A full stay also avoids the risk

19

that ADI recovers double damages from separate trials on the ADI patents not subject to IPRs and any ADI patents that survive IPR.  *Id.*

In the alternative, Xilinx requests this Court stay proceedings with respect to ADI's claims for the '250, '659, and '463 Patents.  To avoid the risk of duplicative discovery from a partial stay, Xilinx is willing to proceed with discovery on the '250, '659, and '463 Patents while staying the substantive proceedings of the case as to those patents, such as claim construction, infringement contentions, invalidity contentions, and expert reports.  Courts have recognized that even partial stays directed only to the patents in IPR result in the simplification of issues for trial.  *See Cypress Semiconductor Corp. v. GSI Tech., Inc.*, No. 13-02013-JST, 2014 WL 5021100, at *3 (N.D. Cal. Oct. 7, 2014) (granting stay for patents subject to IPRs); *Delphix Corp. v. Actifio, Inc.*, No. 13-04613-BLF, 2014 WL 6068407, at *3 (N.D. Cal. Nov. 13, 2014) (same).

The same considerations that warrant a stay of all of ADI's claims also support a partial stay of ADI's claims for the '250, '463, and '659 Patents.  *See supra*, § VI.  A partial stay of the substantive proceedings for ADI's claims with respect to the '250, '659, and '463 Patents, while allowing discovery to continue on those patents, will also reduce the burden of litigation on the parties and the Court while avoiding the risk of duplicative discovery.  ADI's infringement allegations across its eight patents-in-suit are directed to the same accused RFSoC products, and there is likely to be substantial overlap among the relevant Xilinx documents and witnesses.  Proceeding in this manner would keep intact the existing discovery timeline and reduce the need for duplicative discovery should any claims of the '250, '659, and '463 patents survive IPR.

## VII.   CONCLUSION

Xilinx requests that the Court stay all of ADI's claims against Xilinx pending resolution of Xilinx's IPR petitions, or, in the alternative, stay ADI's claims for the '250, '659, and '463 Patents.

sf-4252518

Dated:  July 28, 2020

OF COUNSEL:

Michael A. Jacobs
Richard S.J. Hung
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
(415) 268-7000
mjacobs@mofo.com
rhung@mofo.com

Bita Rahebi
Hector G. Gallegos
Ryan J. Malloy
Alex Yap
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017-3543
(213) 892-5200
brahebi@mofo.com
hgallegos@mofo.com
rmalloy@mofo.com
ayap@mofo.com

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

*/s/ Anne Shea Gaza*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com
swilson@ycst.com

*Attorneys for Xilinx, Inc.*
*and Xilinx Asia Pacific Pte. Ltd.*

## **CERTIFICATE OF SERVICE**

I, Anne Shea Gaza, Esquire, hereby certify that on July 28, 2020, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Jack B. Blumenfeld
> Brian P. Egan
> MORRIS, NICHOLS, ARSHT & TUNNELL LLP
> 1201 North Market Street
> P.O. Box 1347
> Wilmington, DE 19899
> (302) 658-9200
> jblumenfeld@mnat.com
> began@mnat.com
>
> *Attorneys for Analog Devices, Inc.*

I further certify that on July 28, 2020**,** I caused the foregoing document to be served via electronic mail upon the above-listed counsel and on the following counsel:

> William F. Lee
> Cynthia D. Vreeland
> Peter M. Dichiara
> Nicole M. Fontaine Dooley
> Stephanie Neely
> WILMER CUTLER PICKERING HALE
> AND DORR LLP
> 60 State Street
> Boston, MA 02109
> (617) 526-6000
> william.lee@wilmerhale.com
> cynthia.vreeland@wilmerhale.com
> peter.dichiara@wilmerhale.com
> nicole.fontainedooley@wilmerhale.com
> stephanie.neely@wilmerhale.com

Aaron Thompson
WILMER CUTLER PICKERING HALE
AND DORR LLP
350 South Grand Avenue
Suite 2100
Los Angeles, CA 90071
(213) 443-5300
aaron.thompson@wilmerhale.com

Keith Howell
WILMER CUTLER PICKERING HALE
AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
 (202) 663-6000
keith.howell@wilmerhale.com
analogdevices-xilinxservice@wilmerhale.com

*Attorneys for Analog Devices, Inc.*

Dated:  July 28, 2020                     YOUNG CONAWAY STARGATT
                                          & TAYLOR, LLP

                                          */s/ Anne Shea Gaza*
                                          Anne Shea Gaza (No. 4093)
                                          Robert M. Vrana (No. 5666)
                                          Samantha G. Wilson (No. 5816)
                                          Rodney Square
                                          1000 North King Street
                                          Wilmington, DE 19801
                                          (302) 571-6600
                                          agaza@ycst.com
                                          rvrana@ycst.com
                                          swilson@ycst.com

                                          *Attorneys for Xilinx, Inc. and*
                                          *Xilinx Asia Pacific Pte. Ltd.*